

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00291-CV

_____

IN THE INTEREST OF W.H., V.H., E.H., AND C.R., CHILDREN

On Appeal from the 322nd District Court
Tarrant County, Texas
Trial Court No. 322-736463-23

Before Kerr, Birdwell, and Bassel, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

### I. Introduction

This is an ultra-accelerated appeal[1] in which Appellant (Mother) appeals the termination of her parental rights[2] to all four of her children, W.H., V.H., E.H., and C.R.,[3] based on clear and convincing evidence of two predicate grounds—endangering environment and endangering conduct—and a best-interest finding. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E), (b)(2). In three issues, Mother challenges the sufficiency of the evidence to support termination under the endangering-environment, endangering-conduct, and best-interest findings. We affirm the trial court's order of termination.

### II. Background

Fort Worth Police Department Officer Treveon Kindle responded to a call for a runaway child in June 2023. When Officer Kindle arrived, he found Mother with two of her children. Officer Kindle asked Mother what had happened, and she told him that her children had been "making stuff up." Mother told the officer that she is a

---

[1]*See* Tex. R. Jud. Admin. 6.2(a) (requiring appellate court to dispose of appeal from a judgment terminating parental rights, so far as reasonably possible, within 180 days after notice of appeal is filed).

[2]The children's presumed and alleged fathers' parental rights were also terminated, but they do not appeal.

[3]We use aliases to refer to all four children in this proceeding. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8(b)(2).

prophet and can decipher the children's thoughts. Because of what she deciphers, Mother "disciplines" the children. The children told Officer Kindle that they feared Mother and would not go back with her. Officer Kindle, concerned for the safety of the children, sought an emergency detention of Mother and called the Texas Department of Family and Protective Services (the Department), which became involved after this incident.

The Department removed the children from Mother's care due to concerns for her mental health and the children's outcries of physical abuse. The investigation showed "reason to believe" neglectful supervision of all four children and physical abuse of two of the children. One of the children described the physical abuse to Officer Kindle: Mother would take a child into a room and close the door, and the child could hear his sibling being "disciplined" with "a closed fist." Mother also admitted to the caseworker that she would beat the children with a belt and a shoe.

In a status report to the trial court, the Department included a copy of the family plan that outlined the conditions for the children's return to Mother's care. The plan required that Mother: (1) complete a mental-health evaluation; (2) maintain stable and legal employment; (3) obtain and maintain safe, stable, and appropriate housing; (4) participate in individual counseling and be successfully discharged from the same; (5) complete psychological and psychiatric evaluations; (6) maintain weekly contact with the caseworker; (7) participate in weekly visitation with the children; and (8) engage in parenting classes. Mother completed the required parenting class and there was

evidence that she participated in an anger-management program, but she was unsuccessfully discharged. Mother failed to complete several of the required services—she did not provide proof of stable housing or employment nor any proof that she participated in the required psychiatric evaluation or the individual counseling.

Additionally, Mother was in and out of jail before and during the pendency of the case. Mother was convicted of four separate offenses that occurred between June 2022 and February 2024: (1) terroristic threat causing a fear of serious bodily injury in June 2022; (2) assault causing bodily injury in June 2023; (3) theft from a person in September 2023; and (4) deadly conduct in February 2024. Two of the offenses—state-jail-felony theft and misdemeanor deadly conduct—happened after the Department had removed the children from Mother's care.

The children were split up and placed in foster care following removal from Mother's care. The caseworker testified that the children were fearful of returning to Mother's care, and three of the four children did not want to be returned to Mother. Scott Watters, the assigned Tarrant County mental-health counselor, began working with the three eldest children in November 2023. They worked on anger management, emotional recognition, self-regulation, and trauma. Watters stopped working with the children when they were moved to a home outside Tarrant County in May 2024. Watters recommended that all three children continue counseling services.

The children's future was not settled at the hearing. C.R.'s foster family was willing to adopt him if given the opportunity, and the Department identified several

family members as possible placement homes for the other children. Ultimately, the Department recommended the trial court terminate the parental rights of Mother as to all four children. The caseworker for the children testified that placing the children in Mother's care posed an ongoing risk of additional trauma, neglect, and emotional and physical abuse.

## III. Discussion

Mother raises three issues, challenging the legal and factual sufficiency of the evidence to support termination under the endangering-environment, endangering-conduct, and best-interest findings. We need only address the endangering-conduct finding and the best-interest finding, and we hold that sufficient evidence supports both findings.[4]

### A. Standard of Review

For a trial court to terminate a parent–child relationship, the party seeking termination must prove two elements by clear and convincing evidence: (1) that the parent's actions satisfy one ground listed in Family Code Section 161.001(b)(1); and (2) that termination is in the child's best interest. Tex. Fam. Code Ann. § 161.001(b); *In re Z.N.*, 602 S.W.3d 541, 545 (Tex. 2020). Evidence is clear and convincing if it "will

---

[4]Because only one predicate ground is necessary to support termination and because we are upholding the trial court's finding as to the endangering-conduct finding, we do not need to address Mother's first issue, which challenges the sufficiency of the evidence to support the finding under Subsection (D)—the endangering-environment finding. *See* Tex. Fam. Code Ann. § 161.001(b)(1); *In re N.G.*, 577 S.W.3d 230, 234–35 (Tex. 2019); *see also* Tex. R. App. P. 47.1.

produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code. Ann. § 101.007; *Z.N.*, 602 S.W.3d at 545.

To determine whether the evidence is legally sufficient in parental-termination cases, we look at all the evidence in the light most favorable to the challenged finding to determine whether a reasonable factfinder could form a firm belief or conviction that the finding is true. *Z.N.*, 602 S.W.3d at 545. The factfinder may draw inferences, but they must be reasonable and logical. *Id.* We assume that the factfinder settled any evidentiary conflicts in favor of its finding if a reasonable factfinder could have done so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved, and we consider undisputed evidence even if it is contrary to the finding. *Id.*; *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). That is, we consider evidence favorable to the finding if a reasonable factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). The factfinder is the sole judge of the witnesses' credibility and demeanor. *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009). Moreover, evidence is not legally insufficient merely due to inconsistencies or disputes in the evidence, and "a holistic review of the evidence" should be performed. *In re C.E.*, 687 S.W.3d 304, 309 (Tex. 2024).

We must perform "an exacting review of the entire record" in determining the factual sufficiency of the evidence supporting the termination of a parent–child relationship. *In re A.B.*, 437 S.W.3d 498, 500 (Tex. 2014). Nevertheless, we give due

6

deference to the trial court's findings and do not supplant the judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We review the whole record to decide whether a factfinder could reasonably form a firm conviction or belief that the Department proved the challenged predicate ground—here, that Mother's course of conduct endangered the physical or emotional well-being of the children and that the termination of the parent–child relationship was in the children's best interest. *See* Tex. Fam. Code Ann. § 161.001(b); *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). If the factfinder could reasonably form such a firm conviction or belief, then the evidence is factually sufficient. *C.H.*, 89 S.W.3d at 18–19.

## B. Endangering-Conduct Finding

In Mother's second issue, she argues that the evidence is insufficient to support termination under the endangering-conduct ground. Applying the standards of review set forth above, we hold that both legally and factually sufficient evidence supports the endangering-conduct finding.

The trial court may order termination of the parent–child relationship if it finds that the parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." Tex. Fam. Code. § 161.001(b)(1)(E). To "'endanger' means to expose to loss or injury" or "to jeopardize." *In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021) (quoting *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). Under Subsection (E), endangering conduct need not be directed at the child, nor must the

7

child actually suffer injury or harm. *Id.*; *see also In re R.R.A.*, 687 S.W.3d 269, 277–78 (Tex. 2024). Nevertheless, "'endanger' means more than a threat of metaphysical injury or potential ill effects of a less-than-ideal family environment." *In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012) (quoting *Boyd*, 727 S.W.2d at 533). The party seeking termination "bears the burden of showing how [an] offense was part of a voluntary course of conduct endangering the children's well-being." *Id.* at 804. It is not necessary to establish that a parent intended to endanger the child to support termination under Subsection (E). *See In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996).

> As we have previously noted,
>
> As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being. *See* [*In re*] *S.D.*, 980 S.W.2d [758,] 763[ (Tex. App.—San Antonio 1998, pet. denied)]. A factfinder may infer from past conduct endangering the well-being of the child that similar conduct will recur if the child is returned to the parent. *In re M.M.*, No. 02-08-00029-CV, 2008 WL 5195353, at *6 (Tex. App.—Fort Worth Dec. 11, 2008, no pet.) (mem. op.).

*In re M.B.*, No. 02-15-00128-CV, 2015 WL 4380868, at *12 (Tex. App.—Fort Worth July 16, 2015, no pet.) (mem. op.).

Additionally, under certain circumstances the Family Code allows a factfinder to determine that a parent's incarceration endangered a child. *J.F.-G.*, 627 S.W.3d at 313–15. To support an endangering-conduct finding based on incarceration, the evidence must show that the imprisonment "shows a course of conduct which has the effect of endangering the physical or emotional well-being of the child." *Id.* at 313 (quoting *Boyd*, 727 S.W.2d at 533–34). "[T]he mere threat of deportation or incarceration resulting

8

from an unlawful act, regardless of severity, [does not] establish endangerment." *E.N.C.*, 384 S.W.3d at 805. There must be evidence that the parent's "actions created such uncertainty and instability for [her] children sufficient to establish endangerment." *Id.*

Mother argues that the evidence was insufficient to show that she engaged in an endangering course of conduct given her alleged completion of an anger-management course, her participation in counseling sessions, her completion of a parenting class, and her engagement during visitation with the children. However, there was evidence that Mother was unsuccessful in completing the anger-management course and that she never provided proof she had begun any counseling services. We presume the trial court resolved this evidentiary conflict in favor of its endangering-conduct finding. *See Z.N.*, 602 S.W.3d at 545. Mother's argument also fails to consider or discuss her engagement in criminal activity and the physical or emotional abuse of the children— she instead characterizes the evidence of physical abuse as "discipline" of the children. This argument misrepresents the evidence presented to the trial court.[5] Moreover, it

---

[5]We do not condone counsel's practice of omitting or misrepresenting crucial facts in the case and we remind counsel that she owes this court a duty of candor. *See* Standards for Appellate Conduct, *Lawyers' Duties to the Court* ¶ 3, Texas Rules of Court (State) 324–25 (West 2024), https://www.txcourts.gov/media/1437423/standards-for-appellate-conduct.pdf ("Counsel should not misrepresent, mischaracterize, misquote, or miscite the factual record . . . ."); Tex. Disciplinary Rules Prof'l Conduct R. 3.03, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A (Tex. State Bar R. art. X, § 9) (explaining the duty of candor toward the tribunal).

fails to acknowledge Mother's role in the removal of her children as well as the steps she needed—but failed—to take to safely care for them.

Endangerment requires evidence that the parent's "actions created such uncertainty and instability for [her] children sufficient to establish endangerment." *E.N.C.*, 384 S.W.3d at 805. There was evidence that Mother physically abused two of her children by beating them with a belt or a shoe. Mother admitted this abuse to the caseworker and claimed she "had to beat them because they were not listening to her or they were causing trouble." The caseworker testified that even during visits, Mother emotionally abused her children. Specifically, Mother blamed the child who attempted to run away for the Department's involvement in their lives, because his running away prompted the Department's investigation and subsequent determination that there was "reason to believe" that the children had suffered from neglectful supervision and abuse. Additionally, the children feared having to return to Mother's care, and the three eldest children indicated that they did not want to return.

In addition to the findings of neglect and physical abuse, Mother also engaged in escalating criminal conduct throughout the pendency of the case. Three days before the Department began its investigation, Mother pleaded guilty to an assault–bodily-injury charge that had occurred that same month. Then, after the children had been removed, Mother committed two more offenses: a state-jail-felony theft and a misdemeanor deadly conduct. Mother's criminal actions increased in frequency throughout the pendency of the parental rights case—from offenses one year apart

10

between June 2022 and June 2023 (right before the Department's investigation) to two more offenses within the five months between September 2023 and February 2024.

When a parent's imprisonment demonstrates a course of conduct that has the effect of endangering the physical or emotional well-being of the child, it may be considered in analyzing the endangering-conduct finding. *See J.F.-G.*, 627 S.W.3d at 313 (quoting *Boyd*, 727 S.W.2d at 533–34); *see also In re E.S.T.*, No. 01-22-00404-CV, 2022 WL 17096713, at \*15 (Tex. App.—Houston [1st Dist.] Nov. 21, 2022, no pet.) (mem. op.) ("Furthermore, even [nonviolent] misdemeanor offenses[] and arrests for criminal conduct that do not result in conviction will support a finding of endangerment."). Here, Mother's escalating criminal conduct during her parental rights case demonstrates her inability to avoid risky behavior that endangers both the physical and emotional well-being of her children. *See In re A.J.M.*, 375 S.W.3d 599, 606 (Tex. App.—Fort Worth 2012, pet. denied) (op. on reh'g en banc) ("When incarceration affects the parent's ability to care for [her] child[ren], to provide safe living conditions, or to ensure [the children's] safety and well-being, then such incarceration can be a part of a course of continuing conduct.").

Based on all the evidence, and applying the appropriate standards of review, we hold that the evidence is legally and factually sufficient to support the trial court's finding that termination of Mother's parental rights to all four children was justified under Subsection (E)—the endangering-conduct finding. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(E); *see also In re R.H.*, 693 S.W.3d 846, 857–58 (Tex. App.—Fort Worth

11

2024, pet. denied); *Z.N.*, 602 S.W.3d at 545. Accordingly, we overrule Mother's second issue.

### C. Best-Interest Finding

In her third issue, Mother challenges the legal and factual sufficiency of the evidence to support the trial court's best-interest finding. The best-interest factors, however, weigh in favor of termination.

Although we generally presume that keeping a child with a parent is in the child's best interest, *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006), the best-interest analysis is child-centered, focusing on the child's well-being, safety, and development, *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). In determining whether evidence is sufficient to support a best-interest finding, we review the entire record. *In re E.C.R.*, 402 S.W.3d 239, 250 (Tex. 2013). Evidence probative of a child's best interest may be the same evidence that is probative of a predicate termination ground. *Id.* at 249; *C.H.*, 89 S.W.3d at 28; *see* Tex. Fam. Code Ann. § 161.001(b)(1), (2). We also consider the evidence in light of nonexclusive factors that the factfinder may apply in determining the child's best interest:

(A)    the [child's] desires . . . ;

(B)    the [child's] emotional and physical needs[,] . . . now and in the future;

(C)    the emotional and physical danger to the child now and in the future;

(D)    the parental abilities of the individuals seeking custody;

12

(E)     the programs available to assist these individuals to promote the [child's] best interest . . . ;

(F)     the plans for the child by these individuals or[, if applicable,] by the agency seeking custody;

(G)     the stability of the home or proposed placement;

(H)     the [parent's] acts or omissions . . . indicat[ing] that the existing parent–child relationship is not a proper one; and

(I)     any excuse for the [parent's] acts or omissions.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (citations omitted); *see E.C.R.*, 402 S.W.3d at 249 (stating that in reviewing a best-interest finding, "we consider, among other evidence, the *Holley* factors" (footnote omitted)); *E.N.C.*, 384 S.W.3d at 807. These factors are not exhaustive, and some listed factors may not apply to some cases. *C.H.*, 89 S.W.3d at 27. Furthermore, undisputed evidence of just one factor may be sufficient to support a finding that termination is in the child's best interest. *Id.* On the other hand, the presence of scant evidence relevant to any factor will not support such a finding. *Id.*

### 1. Desires of the Children

At the time of the termination hearing, the children had expressed to the caseworker that they feared living with Mother, and the three eldest children did not wish to be returned to Mother. The children also occasionally refused to participate in visits with Mother. C.R. did want to go back home at one point, but despite that desire, he also feared living with Mother. The children's fears of living with Mother causes this factor to weigh slightly in favor of termination.

13

## 2. Emotional and Physical Needs; Emotional and Physical Danger

As set forth above, the evidence clearly shows that Mother frequently engaged in conduct that endangered the emotional and physical well-being of the children. The Department demonstrated that Mother was not able to provide a safe and stable environment for the children throughout the pendency of this case—instead, she continued to engage in criminal activity with increasing severity. The children feared Mother, and the caseworker testified that there was a risk the children would continue to suffer physical abuse and trauma in Mother's care. The caseworker also testified that it would be in the children's best interest to terminate Mother's parental rights. Given the evidence, these factors weigh heavily in favor of termination.

## 3. Stability of the Home; Plans for Children

The evidence showed Mother had made minimal progress on her family plan and had not provided proof of stable, appropriate housing or proof of stable, legal employment. There was testimony that Mother was living with her sister in a group home for persons with disabilities, but there was no evidence that this group home could be a permanent home for the children or even that the children would also be allowed to live there. At the time of trial, one of the children was living with a foster family who wished to adopt him, and the Department believed there were family members who were also interested in adopting the children.

And although the future plans for the children were not finalized, there was no evidence presented that Mother could provide a stable home environment for the

14

children. With Mother's continued criminal activity, the likelihood of a similar situation's arising cannot be ruled out. Further, the caseworker testified that, even after the children had been removed from Mother's care for seven or eight months, Mother was still engaging in the same behaviors that caused the removal. The lack of change indicated that returning the children to Mother was not in their best interest. These factors also weigh heavily in favor of termination.

### 4. Parental Abilities; Available Programs; Acts and Omissions

Mother was given multiple tasks to complete to mitigate the concerns that led to the children being removed from the home. Mother completed only the parenting course and participated in visitation. Mother did not start the required mental-health evaluations, did not successfully complete her anger-management course, and did not provide any documentation showing she had begun individual counseling. The caseworker testified that the proper referrals were made and that efforts were made to supply transportation vouchers but that Mother refused the assistance. The failure to complete the service plan and to take advantage of available support programs causes these factors to weigh in favor of termination.

### 5. Excuses

Mother's appellate brief attempts to excuse her behavior by claiming that she was the victim in "many of the instances" that resulted in criminal convictions. She claims that law enforcement merely labeled her as having mental-health issues but did nothing to identify those issues or to help her—even when she was "seeking help . . .

to protect herself, her children, and her personal property." Despite this claim, Mother pleaded guilty to each of the alleged criminal offenses and neglected to participate in the mental-health evaluations or counseling required in her service plan. The plan indicates that to assign proper services—to address any mental-health issues—Mother had to first submit to an evaluation, but she did not do so. Mother provided no explanation or excuse to explain her behavior in any of those situations. *See In re A.J.D.-J.*, 667 S.W.3d 813, 836 (Tex. App.—Houston [1st Dist.] 2023, no pet.) ("[W]hen the Department has introduced evidence probative of parental unfitness, the factfinder may draw an adverse inference against a parent who does not respond with a valid excuse for . . . her acts or omissions by presenting additional evidence or counterargument based on existing evidence.").

The evidence at trial also shows that Mother blamed her children for the Department's involvement in their lives rather than acknowledging any of her own harmful behaviors. Further, Mother consistently referred to the physical abuse of the children as her "use of discipline."

During the trial, Mother's attorney implied that the Department's support was deficient because the caseworker had not physically taken Mother to look at suitable housing options. Not only was such transport not part of the caseworker's job description, but Mother had indicated to the caseworker that she had her own vehicle. Despite having transportation, Mother still did not complete her required services. The trial court was able to judge the credibility of the witnesses and weigh the evidence

presented. *See J.O.A.*, 283 S.W.3d at 346. This factor also weighs heavily in favor of the trial court's best-interest finding.

### 6. Sufficient Evidence of Best-Interest Factors

We hold that, in light of the evidence presented at trial on the *Holley* factors, the trial court could reasonably form a firm belief that termination of Mother's parental rights would be in the children's best interest. *See Holley*, 544 S.W.2d at 371–72. The evidence is legally and factually sufficient to support the trial court's best-interest finding. *See Jordan v. Dossey*, 325 S.W.3d 700, 733 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (holding evidence legally and factually sufficient to support the best-interest finding when most of the best-interest factors weight in favor of termination). Accordingly, we overrule Mother's third issue.

### IV. Conclusion

Having overruled Mother's second and third issues, which are dispositive of this appeal, we affirm the trial court's order terminating Mother's parental rights to all four children.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered: November 7, 2024

17